## TRADERS & GENERAL INS. CO. v. STONE.

### No. 12498.

Court of Civil Appeals of Texas. Galveston.
April 16, 1953.

Rehearing Denied June 4, 1953.

410

Stone & Phipps, W. E. Stone, of Galveston, for appellant.

Bates, Cartwright & Kolius, S. G. Kolius and Reagan Cartwright, of Houston, for appellee.

CODY, Justice.

With but little editing, we take the following statement of the nature and result of the case from appellant's brief. This suit was instituted by appellee, Troy Y. Stone, against appellant, Traders & General Insurance Company, the compensation carrier of his employer, R. & M. Well Servicing and Drilling Company, to set aside an award of the Industrial Accident Board and to recover in a lump sum benefits under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., for total and permanent incapacity for a period of 401 weeks at $25 per week. The jury found, in answer to special issues, that appellee had sustained total incapacity to work as a result of injuries received by him on the 24th day of June, 1951, while working for his employer, the R. & M. Well Servicing and Drilling Company, and that said total incapacity is permanent and is not temporary, and that such incapacity is not due solely to disease or illness and that a manifest hardship or injustice would result to appellee unless his compensation be paid in a lump sum instead of in weekly payments. The court accordingly rendered judgment for appellee for total and permanent disability as sued for in the sum of $8,956.57.

Appellant predicates its appeal upon 13 points, complaining variously of the admission of certain items of evidence, as well as complaining of certain questions which appellee was permitted to ask of witnesses, and certain statements made by appellee's counsel in argument to the jury, as well as complaining of the answers of the jury to certain special issues as being contrary to the great weight and preponderance of the evidence.

The defendant (appellant here) had pleaded that appellee's disability was due to a pre-existing congenital defect. While appellee was on the witness stand testifying in his own behalf, he was permitted to testify without objection that he had been in the Marine Corps for 36 months, during 28 of which he was overseas and received a shrapnel wound to his right knee. Appellant then objected to the admission of such evidence as being prejudicial, but the court overruled the objection, on the ground that evidence of activities of the appellee was admissible which tended to show that his physical capacity had not been limited by any congenital defect which he had prior to the injury which he sustained while he was in the employment of R. & M. Well Servicing and Drilling Company. Appellee was permitted to testify that the injury to his knee, received in combat, was only a flesh wound, from which he had completely recovered before he received the injury on the 24th day of June, 1951, while working for his aforesaid employer. Furthermore, when appellee propounded certain hypothetical questions to medical witnesses, appellant objected thereto "for the reason that it (the hypothetical question) does not fully state the facts. There should be added thereto the further fact in the evidence that this man saw active duty overseas and received a shrapnel wound to his right leg or knee." And also upon cross-examination appellant, without making any reservation, inquired of a physician whether knowledge by him that appellee had been in combat service for a long time and was wounded would influence the doctor's opinion. It is well established that where a party on cross-examination brings out or

avails himself of evidence which he theretofore objected to he cannot complain of its admission. Jaffe v. Deckard, Tex.Civ. App., 261 S.W. 390; Commercial Acceptance Trust v. Parmer, Tex.Civ.App., 241 S.W. 586.

■ While Dr. Brown was testifying on behalf of appellee with respect to areas of diminished sensation on the right side of appellee's body, he used the spine of a human skeleton to explain and illustrate how the nerves from the spinal column effected a sensory distribution in the body. In that connection he also testified the spine was a normal one. He also availed himself of a chart, while testifying which purported to show the distribution of the nerves to illustrate his testimony. Neither the chart nor spine of the skeleton were offered in evidence. It was not error to admit such testimony. It is competent for a doctor to testify as to whether a spine of a human skeleton, and a chart used by him in his testimony are representations of a normal condition of the distribution of feeling, as the basis for his explanation and illustration of his testimony as to a condition of departure from normality which he testified he found that the appellee had suffered by reason of the injury received on the 24th day of June, 1951.

■ Again, evidence before the court showed that Dr. Lawrence Johnson, who was called as a witness by appellant, had been the family physician of appellee, and had been called in to attend appellee when he received his injuries, and that the doctor had attended him for three or four days and up until he (the doctor) asked the appellee and his wife to call in a specialist. Appellee's wife thereupon asked Dr. Johnson to call in Dr. David. While testifying as a witness for appellee, Dr. Johnson testified that, from his examination of appellee and from looking at the X-rays which he had caused to be made, it was his opinion that appellee had suffered a contusion of the back muscles and that he found no concussion or fractures. From the evidence it was also made to appear that Dr. Johnson had submitted a report to appellant, prior to the trial, as to appellee's condition, including the X-ray pictures which he had caused to be made, and had done so without first having obtained permission from appellee. Appellee's counsel, on cross-examination, asked Dr. Johnson if such action was not unusual and a violation of the ethics of his profession. The court permitted such question to be asked Dr. Johnson for such bearing as it might have on his credibility, and instructed the jury that it could be considered for no other purpose. If evidence is brought out in a case from which a jury would be authorized to conclude that a witness was guilty of unethical conduct in connection with a transaction with respect to which he testifies, such evidence could be considered as bearing on the witness' credibility. See Aguilera v. Reynolds Well Service, Inc., Tex.Civ.App., 234 S.W.2d 282; 17 Tex. Jur. 360. The witness' answer as to whether his conduct had been usual and ethical in the respect inquired about would doubtless be conclusive.

■ The court permitted appellee to testify that he had never received any payments of compensation benefits from appellant, but in that connection instructed the jury that such evidence could be considered only on the issue of whether appellee should be allowed a lump sum recovery of benefits. Such evidence is not, we believe, fairly susceptible to the objection that it tended to make the jury believe that appellant was thereby treating the appellee unfairly and unjustly. The jury was bound to understand that appellant's position in the trial was that it was under no obligation to pay the benefits which appellee was suing to recover, and appellant was resisting making payment of.

In the court's charge to the jury he gave substantially the same definition of "total disability" as that which had been approved as correct by the Commission of Appeals in Texas Employers Insurance Association v. Brock, Tex.Com.App., 36 S.W.2d 704. Appellee's counsel in arguing to the jury stated that the definition given by the court of "total incapacity" did not mean the same thing in this lawsuit as in ordinary street corner conversation, and went on to state,

"So what it means is whether or not Troy Y. Stone can go out on a drilling rig, hire out as a derrick man or hold that position." (The jury knew, of course, that at the time appellee received his injury he was employed as a derrick man on a drilling rig and held that position.) Appellant objected to the amplification by appellee's counsel of the court's definition of "total incapacity" and of his making such interpretation and application of the court's definition. The record shows that the court neither overruled nor sustained appellant's objection to the offending argument but instead informed the jury that " * * * the definitions that have been given you are binding upon you. The Court has given you what it deems the correct definition of 'total incapacity'. If you do not understand it, you can ask for further instructions after you get to the jury room. If you think that Mr. Kolius [that is, appellee's counsel] is giving you the wrong construction of it, why, you are privileged to disagree with him." Appellant's counsel apparently acquiesced in the court's failure to rule definitely upon his objection to the argument, and in the court's leaving the legal propriety of the offending argument to be determined by the jury. In any case, it is inferable that appellant's acquiescence was due to the fact that appellee's counsel withdrew the offending argument and stated to the jury that the court's charge meant " * * * just whether or not Troy Y. Stone is physically disabled to the extent that he can't get a job, do the ordinary tasks of a workman, lift, bend, squat and stoop and climb ladders and hold it, where he can take home that pay check every week. That is what it means." If appellant remained dissatisfied with the argument in question, notwithstanding the apology of appellee's counsel, and continued to consider that it was harmed by reason of the argument in said respect, it should have requested the court to instruct the jury not to consider same and sought to have the jury discharged. In the state of the record, no error was reserved to the argument as it was permitted to stand before the jury by appellee's counsel.

As stated above, Dr. David had been called in to attend appellee by appellee's wife, but was called as a witness by appellant. On cross-examination it was brought out that Dr. David was a stockholder and director in appellant insurance company. In his argument to the jury appellee's counsel stated, "I was surprised and a little embarrassed because Dr. David didn't say when he got on that witness stand, 'I am a member of the Board of Directors of Traders & General Insurance Company.' I think that would have been the fair thing to do."

Again, with respect to Dr. David, appellee's counsel stated in argument to the jury, "Now, there has been a lot of talk about Dr. David. He is not the insurance company's doctor. He is Troy's (appellee's) doctor because Troy's wife called him. She called him and walked into the darndest trap." The court sustained appellant's objection to this latter argument, and notified the jury that such argument was improper, and instructed them to disregard it. Appellee's counsel then said that he didn't intend to imply that a trap was consciously laid, but that the doctor never told appellee or his wife of his connection with the insurance company. No further objection was urged by appellant to such argument.

Appellee's counsel was not guilty of committing reversible error in making the foregoing arguments. An attorney may in his argument draw any inference from the facts, acting in good faith, so long as the inference cannot be denounced as unreasonable. Of course, where the jury is instructed not to consider the argument, it will be presumed the jury obeyed such instruction, unless the argument is so inflammatory that it cannot be cured by instruction.

We have considered the other points relied upon by appellant, but find that they do not present reversible error.

The judgment is ordered affirmed.