TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellant,

v.

Cleto CRUZ, Appellee.

No. 12861.

Court of Civil Appeals of Texas.

San Antonio.

May 18, 1955.

Rehearing Denied June 22, 1955.

Eskridge, Groce & Hebdon, San Antonio, for appellant.

Putman & Putman, San Antonio, for appellee.

## W. O. MURRAY, Chief Justice.

This is a workmen's compensation case in which Cleto Cruz was the claimant, Texas Employers' Insurance Association, the insurance carrier, and Walsh & Burney Company, the employer. The trial was to a jury and resulted in judgment in favor of claimant for total and permanent disability. His average weekly wage was fixed at $46 per week and judgment was rendered in a lump sum. Texas Employers' Insurance Association has prosecuted this appeal.

Appellant's first contention is that the court erred in permitting appellee's attorney before his argument to the jury, to write down the numbers of the special issues upon a blackboard and opposite the number of each special issue the answer he desired the jury to make to the same. We overrule this contention. The attorney for appellee had a right to argue to the jury the answers which he desired to the special issues submitted. He had a right to emphasize what answers he desired, in every way possible and even to beg and plead with the jury to return such answers, so long as he did not indicate to the jury the legal effect of their answers upon the judgment to be rendered. Therefore, we see no reason why counsel for appellee could not write upon a blackboard the number of the issue and opposite thereto the answer he desired, so that the jury might learn these answers not only from listening to what the attorney had to say but also from seeing them written upon a blackboard. Appellant has cited but one case in support of its contention: Wichita Transit Company v. Sanders, 214 S.W.2d 810. This was an opinion by the Fort Worth Court of Civil Appeals which has no writ of error history. In that case the judgment of the trial court was reversed on a number of grounds and we are not at all sure that the court would have reversed the case for the simple reason that a blackboard was used during the argument of counsel.

In Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160, 164, affirming our opinion, 81 S.W.2d 200, the Commission of Appeals, in an opinion approved by the Supreme Court, had this to say:

"Complaint is made of that part of the argument of counsel for the plaintiff in which he begged the jury to answer certain of the issues yes and certain of them no, the point being made that such conduct in effect apprised the jury of the legal effect of the answers. It does not appear that counsel told the jury that the answers for which he begged would result in a judgment for his client. Reasonable latitude must be allowed counsel in arguing a case submitted on special issues. If, as has been correctly said, he may advise the jury how in his opinion, from the evidence, the issues should be answered and may specifically say that certain issues should be answered yes and certain issues no (Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 310), he may also earnestly urge or beg the jury to answer certain issues yes and others no, provided the argument is not so made as to inform the jury of the effect the answers will have upon the judgment to be rendered or as to cause the jury first to agree upon the result desired to be accomplished and then designedly make the answers so as to accomplish such result."

It occurs to us, if counsel may beg and plead with the jury to answer certain issues

yes and certain other issues no, that it would not be improper for him to write upon a blackboard the number of the issue and the answer which he desired to that issue.

It has been held that it is not improper for an attorney to make a mathematical calculation upon a blackboard to show how he arrives at the amount he feels the jury should answer as to damages. Fort Worth & Denver City Railway Co. v. Gifford, Tex.Civ.App., 244 S.W.2d 848, affirmed 151 Tex. 282, 249 S.W.2d 190, Id., Tex.Civ.App., 252 S.W.2d 204; Kimbell v. Noel, Tex. Civ.App., 228 S.W.2d 980.

Even if it be error to write the number of the issue on a blackboard and opposite it the desired answer, it seems to us that it would not be reversible error, under the provisions of Rule 434, Texas Rules of Civil Procedure.

Appellant's second point is as follows:

"Plaintiff's comment to the jury that plaintiff did not have enough money to bring his doctor to testify coupled with the trial court's instruction that the jury should not consider defendant's argument on plaintiff's failure to bring in this medical witness constituted reversible error."

With reference to this matter the parties entered into the following agreement:

"That the following quotation from ground 31 correctly states the events that transpired and correctly recites the ruling of the court and the disposition of the objection in that connection:

"'* * * the attorney for the defendant began to argue to the jury that the plaintiff had an experienced lawyer who knew how to try law suits and that the failure of such lawyer to bring a doctor on behalf of the plaintiff indicated that the plaintiff's doctor would not offer testimony favorable to the plaintiff, and defendant's attorney sought to proceed with further arguments on this line when the plaintiff's attorney objected to such argument and the trial (court) sustained this objection and instructed the jury not to consider the argument of defendant's counsel.'

"That the following quotation from ground 32 of the defendant's motion for new trial correctly reflects the events that transpired in the trial of the case and the ruling of the court thereon:

"'The plaintiff's attorney in objecting to argument by defendant's counsel concerning the failure of the plaintiff to bring a doctor the attorney for plaintiff objected to the argument and added, in the presence of the jury, that the plaintiff did not have money to bring a doctor here to testify; that * * * the trial court sustained defendant's objection to such comment by plaintiff's attorney and instructed the jury not to consider such comment, * * *.'"

The record shows that appellee had been to four doctors. He had been sent to one of them by his employer, and to another by his attorney. When appellant's counsel began his criticism of appellee for not producing medical testimony, it was not clear to which of these doctors he was referring. It was not shown that these doctors were under the control of either appellant or appellee, neither was it shown that they had been subpoenaed and were available to either party. Under such circumstances the argument was improper. The fact that appellee's attorney in objecting to this argument stated to the court, within the hearing of the jury, that the reason appellee had not produced medical testimony was that he was too poor to do so, which statement the jury were instructed to disregard and not consider, could not justify the appellant, under the circumstances, in continuing the improper argument which he had begun to make. The court did not err in instructing the jury not to consider the argument and directing the appellant not to continue such argument.

■ Appellant next complains that the court erred in permitting the jury to determine the average weekly wage of the appellee under the provisions of Article 8309, Sec. 1, Subsection 3, Vernon's Ann.Civ.Stats., when it had not been shown that it could not be computed under Subsection 2 of that Article. The parties agree that the average weekly wage could not be computed under Subsection 1, and we feel the evidence was sufficient to show that it could not be computed under Subsection 2, and therefore it was proper to determine the average weekly wage of appellee under Subsection 3 of Section 1, Article 8309, Vernon's Ann.Civ.Stats. All of the evidence offered on this point was by appellee. The witness Joe B. Mendoza testified as follows:

"Q. In your capacity as a laborer and a member of the union, were you familiar with the work week of laborers in San Antonio? A. Yes, sir.

"Q. As of January, 1953? A. Yes, sir.

"Q. What was the work week? A. Forty hours a week.

"Q. Five days a week? A. Five, eight hour days.

"Q. Fifty two weeks a year. So they would work approximately fifty-two times five, or two hundred sixty days per year? A. Weather permitting.

"Q. And if no holidays intervened? A. That's right.

"Q. What holidays did you have? A. We have six national holidays.

"Q. If a holiday fell on either a Friday or Monday would they be working? A. No, sir.

"Q. They would be working overtime? A. If they wanted to pay premium pay; yes.

"Q. So you would have two hundred sixty days a year with the exception of four or five days less for holidays? A. That's right.

"Q. And the pay for labor work at that time was what? What was the scale? A. $1.15 an hour.

"Q. And that was in the entire San Antonio area? A. That is set by the United States Government.

"Q. Now, the type of work that you were doing and Mr. Cruz was doing, will you describe that to us? What was it? A. At that time he was a cement helper."

This evidence, under the circumstances, was sufficient to support the finding of the jury. Southern Underwriters v. Boswell, Tex.Civ.App., 141 S.W.2d 442, affirmed 138 Tex. 255, 158 S.W.2d 280; Texas Employers Ins. Ass'n v. Locke, Tex.Civ.App., 224 S.W.2d 755, wr. ref.; Employers' Liability Assur. Corp. v. Manning, Tex.Civ.App., 188 S.W.2d 268, wr. ref.

■ Appellant next complains because the court overruled its motion to declare a mistrial and discharge the jury because of the voir dire examination of one of the prospective jurors. The following questions were asked and the following answers given:

"Q. Would you leave aside your personal experience; shut that out completely; and base your verdict solely upon the evidence and upon the charge of the court? A. I believe I would lean a little to one side.

"Q. Which side? A. The back injury; you don't get rid of them; and against the big company.

"Mr. Putman: I think we should excuse the juror.

"The Court: Your impression of jury service is based upon what happened after the case was over and it was being investigated? A. Yes.

"The Court: You understand that is a personal matter don't you, and the

court has nothing to do with that? A. Yes. I like jury duty. I like being on a jury, but we took the evidence and everything was fair to our knowledge but still the company didn't want to pay off. They just didn't want to settle.

"The Court: I am going to excuse you in this case. You will report back to the central jury room. We will recess now until two o'clock."

When court reconvened at 2 p. m. appellant made a motion for a mistrial, which was overruled by the trial court.

We overrule appellant's point for the reasons stated in a recent opinion by this Court, styled Texas Employers' Insurance Association v. Schanen, 263 S.W.2d 614.

Appellant next complains that there is no evidence, or in any event insufficient evidence to support the findings of the jury. We overrule this contention under the holdings of the Supreme Court in the recent case of Hargrove v. Trinity Universal Insurance Company, 256 S.W.2d 73.

There being no reversible error, the judgment is affirmed.