**NORTH TEXAS PRODUCERS ASS'N,
Appellant,**

v.

**Ray F. JENKINS, Jr., Appellee.**

**No. 7004.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 27, 1960.

Rehearing Denied Jan. 23, 1961.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Merchant, Fitzjarrald, Poole & Merchant, Amarillo, for appellee.

NORTHCUTT, Justice.

Ray F. Jenkins, Jr., hereafter referred to as appellee, brought suit against North Texas Producers Ass'n, hereafter referred to as appellant, to recover damages for personal injuries allegedly sustained in a collision involving appellant's truck and the Gore automobile in which appellee was riding. Trial to a jury resulted in a jury verdict, founded on which the court rendered judgment in favor of appellee and against appellant in the amount of $25,000. From this judgment, appellant perfected this appeal.

Appellant presents this appeal upon six points of error, but since we are of the opinion the case should be reversed because of the error of the jury in rendering a quotient verdict, we will only discuss that one assignment. The jury was having some trouble agreeing as to the amount of damages to assess. It was suggested that each one write down on a piece of paper the amount each one wanted to allow and to give the piece of paper to the foreman to add and to be divided by twelve. On a hearing on the motion for new trial, seven members of the jury were questioned.

The foreman of the jury was asked by appellee's attorney, "When you got to the damage issue, tell me how you arrived at the damages?" His answer was, "Well, everyone had a different idea and so we all put our amount, that we wanted to give, on slips of paper, and they all turned it in to me and I added it all up and divided by twelve." Question: "Then what happen-

ed?" Answer: "It didn't come to quite twenty-five thousand dollars—it lacked, I don't remember the exact amount, but we made it twenty-five thousand dollars, and then we all agreed that would be it." This is an admission that the jury arrived at the damages by adding the amount each handed to the foreman which he added and divided by twelve. The fact it did not come out an even number and the jury decided to make it $25,000 and agreed to that did not change the fact as to the method of arriving at the amount of damages. One of the jurors testified when the added amount was divided by twelve, it came out $25,000. Another juror testified as follows:

"Q. With regard to the amount of damages that was written in, tell the Court, please, how that amount was arrived at, if you will? A. Well, we just figured the amount among ourselves and could come to no agreement, and so somebody suggested everybody write their amount on a piece of paper, and then add it up.

"Q. And then do what with it? A. Well, divide it by twelve.

"Q. And was that done? A. Yes, sir.

"Q. And that was done at someone's suggestion and you all agreed to it, is that right? A. Yes, sir."

On direct examination one of the jurors testified as follows:

"Q. Again asking with respect to special issue No. 5, pertaining to damages, can you tell us what happened when you all reached that issue? A. Well, we discussed the damage and how much he should get, and someone said, 'well the insurance would pay it, any which way it went,'—that the insurance would probably pay it.

"Q. Was there any discussion with reference to attorney's fees? A. Yes, that the attorney would probably get about one-third or one-half of it.

"Q. Do you recall who said that? A. Well, Mr. Litchfield, I believe.

"Q. Was there any discussion in the presence and hearing of the jury with reference to doctor or hospital bills? A. Well, yes, we took into consideration the doctor bills and hospital bills on that.

"Q. Then how did the jury proceed to answer that issue, what then happened please? A. You mean to get the amount?

"Q. Yes, just what did they do? A. Well, we couldn't come to a conclusion on what amount to give to him, because everyone had a different opinion on what to give, and someone spoke up and said, 'let's write it down on a slip of paper and then give to the foreman to add up and divide by twelve,' and that we would come to an answer like that, and so we did.

"Q. Did you write a figure down on a slip of paper? A. Yes, sir.

"Q. What amount, if you remember? A. Twenty thousand dollars.

"Q. The figure that you wrote down, did that include any allowance for doctor or hospital bills? A. Yes, sir.

"Q. How about attorney's fees? A. Well, we figured he would get probably one-third or one-half of it.

"Q. Did you take that into consideration on the figure you made? A. Yes, sir.

"Q. What was done with the slip of paper on which you had written your figure? A. We gave them to the foreman.

"Q. And what did he do with those? A. I thought he threw them in the waste basket.

"Q. I mean before— A. Oh, he took and added them up and divided by twelve.

"Q. Do you remember what that came out to? A. I think it came out to twenty-five thousand dollars, even.

"Q. That is all."

Then on cross examination the same juror testified as follows:

"Q. Is it true that Mr. Litchfield said the attorneys would get about one-third of the damages? A. Yes, sir.

"Q. And you know that is what happened? A. Yes, sir.

"Q. And you don't know who said anything about that the insurance company would have to pay the judgment? A. No; we were just discussing it; I don't recall who said it.

"Q. When you sat down to write these figures on a slip of paper, did you agree beforehand that whatever it came out to, that would be the damage issue verdict? A. Yes, sir.

"Q. Now, suppose everybody else wrote one dollar and you wrote twenty thousand dollars, and the foreman added that up to twenty thousand and eleven dollars and divided that by twelve, would you have agreed to give him just a thousand dollars? A. Well, we had all agreed to vote on it like that.

"Q. After you took an oath to be a fair and impartial juror, you would have done that? A. Well, I didn't know we were not supposed to do that, at the time.

"Q. But suppose everybody else had put down one dollar and you put down twenty thousand dollars, and he divided that by twelve and it came out at $1001.00, you mean you would have agreed to that? A. I imagine so, because, after all, we had all agreed to that, and I think we were all trying to be fair.

"Q. You didn't care what you believed, but would have gone along with them? A. No, I cared what I believed, but we were all trying to be fair, I think.

"Q. You are saying, though, that if everybody else had given a dollar apiece, and you in your mind thought he was entitled to twenty thousand dollars, that you would have done that? A. Yes, sir."

One other juror testified as follows:

"Q. When you got to the questions, tell me what you did? A. Well, we began, and there were discussions here and there, and it was insisted that everybody must say the same, and so it was discussed and it was put up to each one as to what they thought, and so we were differing on amounts that the damages should be, and somebody suggested, why not hand us all a pencil and paper and let us write down our amounts and turn them in to the foreman, and divide by twelve, and that was agreeable with everybody, and that is what we did.

"Q. When you got the amount, did it come out even twenty-five? A. No, sir; it was around twenty-five; to the best of my knowledge it was close—it was twenty-four, something. And it was said, will it be agreeable to everybody to make it the round figure of twenty-five thousand dollars, and everybody said yes, and so we put it in and went home."

It is to be noticed that none of the jurors that were questioned ever stated that they did not agree to abide by this manner of reaching a verdict as to the damages.

■ Then the sole question on this point would be whether the verdict was reached in such manner as to be error. If the misconduct of the jury has been established, the question of probable injuries becomes one of law for the courts. City of Houston

v. Quinones, 142 Tex. 282, 177 S.W.2d 259. Storey et al. v. Zuniga et ux., Tex.Civ. App., 254 S.W.2d 415 (writ refused N.R. E.).

 We are familiar with the rule that if a jury merely uses the quotient method in attempting to compare their differences that it is not misconduct. In order to constitute error, there must be a preagreement to the effect that the result of the division should constitute their verdict.

We are of the opinion this record clearly shows that there was a preagreement to the effect that the result of the division should constitute their verdict. There was direct testimony that it was agreed that would be their verdict. This testimony together with the fact they took the amount arrived at by such division and after it did not come out in round figures to make it in round figures of $25,000, at least the amount arrived at by such division was improperly determined. We are of the opinion the case of People's Ice Co. v. Nowling, Tex.Civ.App., 16 S.W.2d 976 is directly in point here.

A quotient verdict is nothing more than a verdict by chance. No juror knows what verdict he is rendering. Each juror is free to write any figure he might wish for the purpose of helping to reach a judgment according to his desire. The answers of the jurors in this case show what might result from such procedure. Most all of the jurors could not tell the amount written for him or her. One juror testified she wrote $20,000 but agreed to the $25,000 because they had agreed to do as they did, and she would have agreed if the amount had come out a $1001. This same witness testified she didn't know at the time they were not permitted to reach their verdict that way. We think the undisputed record in this case shows a preagreement to abide by the results reached when the foreman added the figures handed to him and divided by twelve.

In the case of Allcorn v. Fort Worth & R. G. Ry. Co., Tex.Civ.App., 122 S.W.2d 341, 344 (writ refused) it is stated:

"While the testimony as to such agreement in advance to abide the result of such verdict is not conclusive, it strongly indicates that such was its purpose and effect, and that the jury did in fact substantially base their verdict on the result. At any rate the testimony on the motion for a new trial by no means negatives such an agreement; but on the contrary strongly indicates that it was made."

We are unable to find in this case any negative testimony showing that the preagreement was not made, but there is direct testimony that it was made. Judgment of the trial court is reversed and remanded.