**SUNSET BRICK & TILE, INC., et al.,**
**Appellants,**

v.

**Taft E. MILES et al., Appellees.**

**No. 373.**

Court of Civil Appeals of Texas.

Corpus Christi.

June 27, 1968.

Rehearing Denied July 25, 1968.

John H. Benckenstein, Beaumont, for appellants.

W. Jack Salyer, Bay City, Carroll, Matthews & Willatt, Mike Willatt, Houston, for appellees.

NYE, Justice.

## OPINION

Plaintiffs brought suit against Sunset Brick & Tile, Inc. and Daniel V. Leazer for personal injuries resulting from a collision of the automobile in which they were riding and Sunset's truck driven by defendant Leazer. Three separate suits involving the four plaintiffs were consolidated for trial after pleas of privilege were overruled as to all suits.[1]

Briefly, the collision occurred during a misting rain one morning before sunup while the plaintiffs were riding to work near Palacios. The automobile in which they were riding crashed into the rear end of the appellants' slow moving truck which was loaded with bricks. The jury after a week and a half of trial convicted the appellants of various counts of negligence; summarized as: knowingly driving the truck-trailer in question without lights or reflectors on the trailer. The acts of negligence were each found to be a proximate cause of the collision in question. The driver of the car in which the plaintiffs were riding, was killed. His particular case is not involved in this appeal. The appellants do not attack the sufficiency of the evidence nor do they allege any error that occurred during or throughout the actual trial. Their appeal is based on twenty points of error that present four basic contentions which are briefed and argued together as such.

■ Appellants' first contention is that plaintiffs' argument to the jury relative to damages was based on a unit of time or per diem argument; and that the attorney for the appellees used figures and mathematical calculations on charts and placards which were not in evidence. In the final argument to the jury, the attorney for the plaintiffs while discussing damages, made certain mathematical analysis of the damages sought by each plaintiff. These were apparently set forth on charts. The charts were not brought forward in the record and therefore we have no way to examine them. The attorney for the plaintiffs based his estimate of future damages on figures using the number of years of the life expectancy of each of the plaintiffs, and multiplied the same by an estimate of the damages to arrive at a figure in dollars and cents. These figures were suggested by the attorneys as an estimate of the damages that plaintiffs incurred. Appellants' objection came after a discussion be-

1. Sunset Brick and Tile, Inc. v. Miles, Tex.Civ.App., 417 S.W.2d 93; Sunset Brick & Tile, Inc. v. Wessels, Tex.Civ. App., 419 S.W.2d 452; Sunset Brick & Tile, Inc. v. Bushong, Tex.Civ.App., 419 S.W.2d 386.

fore the jury of these damages as to one of the plaintiffs. Plaintiffs' attorney was arguing that this plaintiff had had physical pain and mental anguish for 753 days from the time of the accident to the time of the trial. The attorney stated: "I use the figure of $5.00 a day. You may think it should be more. You may think it should be less." To this argument the appellants objected on the basis that this was a unit of time argument for pain and suffering; it was not supported by the evidence, and that the same was prejudicial to the defendants. The court overruled the objection and granted the appellants' attorney's request for a continuous objection to the unit of time or mathematical formula argument.

Appellants in support of their contention that this was error, cite and quote authorities from other jurisdictions. However, the rule in Texas is well settled to the contrary of appellants' contentions. The propriety of arguments grounded upon mathematical analysis has been long accepted by the appellate courts of this state. Justice Pope had this to say relative to such contentions in the case of Hernandez v. Baucum, 344 S.W.2d 498 (Tex.Civ.App.–San Antonio 1961, n. r. e.):

> "The propriety of arguments grounded upon a mathematical analysis has been accepted in Texas. Texas & New Orleans R. Co. v. Flowers, Tex.Civ.App., 336 S.W.2d 907, 916; Louisiana & Arkansas Railway Co. v. Mullins, Tex.Civ.App., 326 S.W.2d 263, 267–268; Continental Bus System, Inc. v. Toombs, Tex.Civ.App., 325 S.W.2d 153, 163; Texas Employers' Ins. Ass'n v. Cruz, Tex.Civ.App., 280 S.W.2d 388, 390; J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786, 789. The attack upon arguments and visual aids which cut the pain period into segments is that there is no evidence of the monetary value of pain, but that argument, if valid, would eliminate all awards of damages for pain. Pain is translated into dollars with difficulty, whether the jury looks at the total period and grasps a figure from the air, or looks at the pain per year, as here, and multiplies the yearly estimate by the total of the years. The damage issues themselves divided the pain into periods of time. The time from injury to trial was one period, and from trial to the future was another. The law recognizes that pain is a proper item for recovery; that it is susceptible only for an approximate monetary evaluation, that jurors may arrive at a figure from their common knowledge and sense of justice, and that counsel may suggest what they believe the evidence will support. * * *"

See also Chemical Express v. Cole, 342 S.W.2d 773 (Tex.Civ.App.–Dallas 1961, ref. n. r. e.); Mid-Tex Development Company v. McJunkin, 369 S.W.2d 788 (Tex. Civ.App.–Dallas 1963). Appellants' points one through six are overruled.

Appellants' second contention is taken up with points seven and eight. This concerns error because of jury argument. At the very outset the attorney for the plaintiffs made the usual courteous remarks to the jury and thanked them for their time and attention and discussed with them the attorney's responsibility in representing his clients. The attorney told the jury that he and his colleague had attempted to present the case to them in as favorable a light as possible. Quoting from the argument the attorney said:

> "* * * So it is up to Doug and I to bring their (the plaintiffs') case before you and in as favorable a light as we can. In this responsibility is quite frightening to me. We have tried to bring you the truth. We have brought you everything, everybody that we knew that knew anything about this accident.

> "I think that the Defendants set the tone of their defense from the very first day, they set the tone two years ago. That is this case has been developing for two years. We have worked, and we have searched for the truth to bring it to you and everytime that we turn around to try

and get the truth, they throw a road-block up.

MR. BENCKENSTEIN: If Your Honor please, I want to object to this type of argument, this is a lawyer testifying in front of the Jury, what they have done in this case. It is prejudicial.

MR. SALYER: I withdraw it, Your Honor.

THE COURT: The Jury is instructed to disregard."

Following this instruction by the court, the attorney continued and explained to the jury that they had attempted to see the truck in question and finally had to go into court and get a court order just to see the truck and the trailer. Continuing and quoting from the argument:

" * * * Doug Matthews, Jack Maddocks, Lipscomb Norvell and myself met Bill Prather, for three hours we went over this truck that was sitting out in the sun, but fortunately we got a couple of pictures of it with a Polaroid. Ladies and gentlemen, they even switched trucks on us.

"MR. BENCKENSTEIN: Now, Your Honor, I want to object to that, because there is no such evidence in the record, and there hasn't been any change of any trucks or switching of any trucks. There is no evidence of that, there is nothing in the record and we ask that counsel stick to the record.

"THE COURT: I think counsel can argue what he surmises from the evidence, and with those instructions I will overrule."

The evidence showed that in the week before the trial the attorneys for the appellees had obtained a court order and had gone to Gonzales, Texas where they were shown a truck-trailer represented by the appellants to be the truck-trailer involved in the collision. The trailer was sitting out in the sun and the appellees and their representatives went over it for 2½ or 3 hours.

The attorneys took polaroid pictures of the trailer which were subsequently admitted into evidence. The evidence was that the trailer which was shown to the appellees' attorneys was represented by the president of appellants' corporation to be the trailer involved in the collision. However, a high-way patrolman who had investigated the collision, testified that the trailer shown in the polaroid pictures was not the trailer that was involved in the collision. He said that there was a difference in that the trailer involved in the collision only had one light on either side of the rear end of the trailer and had no reflectors. Whereas the trailer shown in the polaroid pictures had two lights on either side, plus reflectors on either side. The highway patrolman produced pictures at the time of the trial to substantiate his story. Other witnesses also testified that the lights on the rear end of the trailer involved in the collision were the same as that testified to by the highway patrolman, and were not the same as the trailer shown to the appellees' attorneys in Gonzales by appellant.

■■■ It is settled law that in jury argument the attorney may make reasonable inferences and deductions from the facts in evidence. The attorney is permitted considerable latitude in making deductions from the evidence in his argument before the same would amount to reversible error. If the first part of the argument quoted above was error, the trial court's instruction cured the error. Younger Brothers, Inc. v. Myers, 324 S.W.2d 546 (Tex.Sup. 1959); Transport Insurance Co. v. Burditt, 294 S.W.2d 248 (Tex.Civ.App.–Eastland 1956). We hold that in any event the error, if any, was not calculated to cause, nor did it probably cause, the rendition of an improper judgment in this case. Rule 434, Texas Rules of Civil Procedure; Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (Tex.Sup.1953). The later objection urged as error is without merit as we believe that the same was a fair comment on the evidence. City of Houston v. Ready, 370 S.W.2d 210 (Tex.

Civ.App.–Houston 1963); Morgan v. Luna, 337 S.W.2d 139 (Tex.Civ.App.–El Paso 1960); Coastal Transmission Corp. v. Lennox, 331 S.W.2d 778 (Tex.Civ.App.–San Antonio 1960); Associated Employers Ins. Co. v. Burris, 321 S.W.2d 112 (Tex.Civ. App.–Amarillo 1959, ref. n. r. e.); Traders & General Ins. Co. v. Stone, 258 S.W.2d 409 (Tex.Civ.App.–Galveston 1953). These points are overruled.

Appellants' third contention concerns jury misconduct. This is based on the trial court's refusal to hear testimony from the jurors at the hearing of appellants' motion for new trial. In appellants' amended motion for new trial they attached thereto an affidavit of juror Jo Ann Mann. The part of the affidavit claimed to be jury misconduct reads as follows:

"In arriving at the damages, some of the jurors wanted to give each one of the plaintiffs 100% of the amount that the attorneys asked for, but I did not feel that they were entitled to that much."

"After much argument we all decided to give them 75% of the amount that had been requested by the attorneys for the plaintiffs, and that is the way we arrived at the verdict of giving them 75% of this amount of money."

The appellants contend that this affidavit affirmatively shows material jury misconduct; therefore, the trial court erred in not permitting the appellants to cross-examine all of the jurors. Appellants argue that the affidavit shows that the jurors agreed to give each of the appellees 75% of the amount that their attorneys asked for, and that this is the same type of error as the action of jurors binding themselves in advance; * * *. "to abide by the decision of the majority"; * * *. the same as: "the toss of a coin"; * * *. the same as: "the quotient verdict"; * * *. or as here, the jurors had impliedly agreed to be bound to an amount of 75% of the money requested by the attorneys for the

plaintiffs. Actually the jurors did bring in a verdict which mathematically figures out to be 75% of the amount petitioned by the plaintiffs.

The biasness which is common to the quotient verdict or the toss of the coin, is the agreement by the jurors in advance to be bound by a result * * * even though at the time they make the agreement they do not know what that result will be. This amounts to a verdict by chance rather than by thought and reflection. See North Texas Producers Ass'n v. Jenkins, 342 S.W.2d 192 (Tex.Civ.App.– Amarillo 1960); Crawford v. Consolidated Underwriters, 323 S.W.2d 657 (Tex.Civ. App.–Beaumont 1959); Kindy v. Willingham, 146 Tex. 548, 209 S.W.2d 585 (Tex. Sup.1948). Here the jurors knew the amount that the attorneys were asking, not only from the petition but from the argument made to them by the appellees' attorneys. The affidavit itself verifies the harmless mental process of this juror where she says: " * * * some of the jurors wanted to give each one of the plaintiffs 100% of the amount that the attorneys asked for, but I did not feel that they were entitled to that much." The juror said that after *much argument* [2] they all decided to give them 75%. The jurors are presumed to know with reasonable accuracy what 75% of a certain amount is, so in effect they were agreeing to a known amount. We hold that the statement made by juror Mann does not evidence a prior agreement to be bound by an unknown result. Her affidavit does not show material jury misconduct. The trial court did not err in not granting appellants permission to orally examine all of the jurors in an attempt to ferret out misconduct. Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644 (1942). See Luby v. City of Dallas, 396 S.W.2d 192 (Tex.Civ.App.–Dallas 1965, n. r. e.). Appellants' points 9 through 13 are overruled.

2. Emphasis supplied.

Appellants' last contention is based on excessive damages for each of the four appellees. Appellants in support of their points of error 14 through 20 that the damages are excessive, offer a rather brief selected summary of the evidence concerning the injuries each of the appellees received. They do not cite any cases or offer any application of these selected facts to the applicable law of excessiveness of the award. The rule is well established that the appellate courts must first view the evidence most favorable to the award, and in the end, the court should not substitute its judgment for that of the jurors in the absence of a rather clear indication of passion, bias or prejudice. Sumners Road Boring, Inc. v. Thompson, 393 S.W.2d 690 at 698 and cases cited therein (Tex.Civ. App.–Corpus Christi 1965, n. r. e.). See also Hobbs v. Grant, 314 S.W.2d 351 (Tex. Civ.App.–Austin 1958, n. r. e.) ; Continental Bus System v. Toombs, 325 S.W.2d 153 (Tex.Civ.App.–Ft. Worth 1959, n. r. e.) ; George C. Vaughan & Sons v. Dyess, 323 S.W.2d 261 (Tex.Civ.App.–Texarkana 1959, dism.). The entire trial was remarkably free of even questionable error. The appellants make little attempt to demonstrate that the damages are excessive, and make no contention that there was insufficient evidence to support the award or that the jury rendered its verdict as a result of some improper motive. Without stating all the facts in detail, we deem it advisable to briefly summarize the injuries and the damages awarded to each appellee. All of the appellees were oil field workers and they were on their way to an oil field job when the accident happened.

Appellee Carl Wessels was married, with five children, and at the time of the trial was 39 years old with a life expectancy of 32.7 years. He had a sixth grade education and had worked steadily in the oil fields from the time he was age 20 until the date of the collision in question. As a result of this accident he received a rather severe laceration of the forehead and a badly displaced compound comminuted fracture of the right forearm. A little more than a week after his initial entry into the hospital, x-rays indicated that the reduction to his forearm was not satisfactory, and he again was operated upon to further reduce his arm and to apply traction incorporated into a plaster cast. He remained in the hospital for eighteen days during which time he received medication for pain and discomfort. He was unable to return to work until approximately 5½ months after the accident and did so then because he had no other income to support his family. The doctor testified to severe injuries and permanent damage to his wrist which would give him difficulty in performing his work around oil rigs. There was testimony that he was still suffering from headaches and blurred vision and that the type of work he was able to do would not be the same that he was accustomed to do. The doctors testified that he would require physical therapy and medication in the future for pain and that this would average between $100.00 and $150.00 per year. A specialist testified that an operation costing $500.00 would be helpful but would not completely solve his disabilities. His loss of earnings for the 5½ months he was without work amounted to $2,700.00. The jury awarded Wessels $2,000.00 for future medical expenses and $12,250.00 general damages for past and future physical pain, mental anguish, and past and future loss of earning capacity and past and future physical impairment.

Appellee Irwin Baggett was a 37 year old man, married with three children, and with a life expectancy at the time of the trial of 34.5 years. He was a high school graduate and had spent most of his life doing oil field work. Baggett sustained severe injuries to his face and mouth; lacerations to his chin, lip and mouth. He received a broken left leg and a severance of the nerves in and around the lower part of his face and chin. His leg injury involved the knee joint and the testimony was that he was unable to work for more than a year. He lost ap-

proximately $6,000.00 in wages and still was unable to return to rough neck work after a year because of the injury to his leg. At least two doctors testified as to the permanency of the injury and to the pain and disabling condition that he would experience in performing manual labor. One doctor testified that Baggett would need future physical therapy, some injections and x-rays for the rest of his life and that the cost of this treatment would be a minimum of $200.00 per year; that his prognosis was diagnosed as being progressive and that his condition would probably worsen because of the traumatic arthritis. The jury awarded Baggett $2,500.00 for future medical expenses and $23,750.00 as general damages.

■ Appellee Taft Miles received very severe injuries which included a compression fracture and dislocation of the first lumbar vertebra to his back. He had a loss of memory for the first four days in the hospital and was given frequent medication for pain. The testimony was undisputed that Miles had been a very good worker but after the injury was unable to do oil field work. Recent examination just prior to the trial showed that one intervertebral disc had been essentially destroyed and the other damaged and a natural fusion between the injured vertebra was beginning to take place. He had only a seventh grade education and had left school then at the age of 17. He was unable to stay in the Army because he was unable to pass the written tests and was therefore required to do physical manual labor to earn a livelihood. The testimony was that Miles was suffering from a permanent injury and that he would need between $250.00 and $300.00 per year for future medical care. One doctor testified that he may need a laminectomy and fusion at the level of his back injury and that the cost of this operation would be $1500.00. He was married and had two children and was 31 years of age at the time of trial. His life expectancy was 40.1 years. The jury awarded Taft Miles $5000.00 for fu-

ture medical expenses and general damages in the amount of $68,500.00

■ Appellee Isadore Vincent was awarded general damages in the amount of $2625.00 which did not include past and future physical impairment or future loss of earning capacity. He was 62 years old at the time of the trial and had an average life expectancy of 14.8 years. He only had three years of schooling and had left school to help his father on the farm. At age 17 he began doing oil field work and had been doing this type of work almost continuously throughout his entire lifetime. As a result of the accident he was knocked unconscious for a short period of time and with a resulting knot on his head. He sustained some minor injuries to his left ankle, bruises and contusions to his back, an injury to his right knee and other slight injuries over other areas of his body. He was hospitalized overnight. Against doctors' advice he left the hospital the next day to return to work tending a boiler on an oil field job because his foreman needed him. At the time of the trial he was still suffering with discomfort of his knee and complaining somewhat of his head injuries whenever he worked in the sun. The doctor testified that he would expect Vincent to suffer continuing pain and headaches as a result of his injuries.

There are many cases involving the excessiveness of awards for physical pain, disability and injuries. The decision in each one must necessarily rest upon the facts of each individual case. There is no exact scientific measurement that can transform these injuries into dollars and cents. Our Supreme Court has said that the amount of damages to be awarded an injured person must be left to the sound judgment and discretion of the jury; provided, however, that the award must be based on evidence and not mere conjecture. It must be "an intelligent judgment, based upon such facts as are available." McIver v. Gloria, 169 S.W.2d 710 (Tex. Sup.1943); Dallas Consolidated Electric St.

Ry. Co. v. Motwiller, 109 S.W. 918 (Tex. Sup.1908).

We have reviewed all of the evidence and have considered the award of the jury as to each appellee as it concerns his injuries and damages. The amount awarded by the jury in this case does not offend the conscience of this Court. We therefore decline to substitute our judgment for that of the jury. Dallas Transit Company v. Hammer, 404 S.W.2d 85 (Tex.Civ.App.–Dallas 1966, n.w.h.); Pioneer Bus Company v. Ward, 422 S.W.2d 550 (Tex.Civ.App.–Houston 14, 1967). See also Missouri Pacific Railroad Co. v. Miller, 426 S.W.2d 569 (Tex.Civ.App.–San Antonio 1968) and Broesche v. Bullock, 427 S.W.2d 89 (Tex.Civ.App.–Houston 14, 1968). Appellants' points are overruled.

Judgment of the trial court is affirmed.

SHARPE, Justice (concurring).

I concur in affirmance of the judgment.

The majority opinion does not mention several cases cited by the parties in connection with appellants' points one through six relating to the argument made by counsel for appellees concerning damages for pain, suffering and mental anguish on a "unit-of-time" basis. In my view, some of these cases merit consideration, discussion and analysis.

In support of their position that such argument constitutes reversible error, appellants rely in part upon the cases of West Texas Utilities Co. v. Renner, 53 S.W.2d 451 (Tex.Comm.App., 1932, holdings approved); Johnson v. Colglazier (5th Cir., 1965) 348 F.2d 420; and Baron Tube Company v. The Transportation Insurance Company (5th Cir., 1966) 365 F.2d 858. Appellees also rely in part on *Baron*.

The principal difficulty here with reference to the "unit-of-time" argument is caused by one of the holdings in West Texas Utilities Co. v. Renner, *supra*, as follows:

"Equally objectionable was the following argument, properly but futilely objected to: 'If you pay me $3.00 a day to walk over town with my leg tied up like this (indicating); $3.00 a day like that (indicating) in twenty years' time, it would be $25,000.00 at $3.00 per day." 53 S.W. 2d 456.

Texas cases on the "unit-of-time" argument are discussed (along with others, including Johnson v. Colglazier) in the notes appearing in 20 Southwestern Law Journal 208 (1966) and 44 Texas Law Review 195 (1965). Baron Tube Co. v. Transport Ins. Co. is the subject of a note in 20 Southwestern Law Journal 934 (1966).

In 20 Southwestern Law Journal 208, 211 (1966), Note, "The Unit-of-Time Argument—Inherently Prejudicial?" the following (with footnotes shown in parenthesis) appears:

"Texas is a jurisdiction difficult to categorize. In 1932 the Texas Commission of Appeals held in Renner v. West Texas Utilities (14: West Texas Util. v. Renner, 53 S.W.2d 451, Tex.Comm.App. 1932) that it was improper for plaintiff's attorney to argue that if the jury awarded three dollars per day for twenty years to one who had lost the use of a leg as that plaintiff had, the amount so paid would be $25,000. The opinion was adopted by the Texas Supreme Court. (15: Id. at 457). A later Texas court of civil appeals case (16: Warren Petroleum Co. v. Pyeatt, 275 S.W.2d 216, Tex.Civ.App. 1955, error ref. n. r. e. held that it was improper for plaintiff's attorney to display to the jury a blackboard which depicted, among other things, the lump-sum figure requested, and to argue therefrom damages for pain and suffering. However, in the more recent Texas court of civil appeals cases, (17: Simmons Motor Co. v. Mosley, 379 S.W.2d 711, Tex.Civ.App. 1964, error ref. n. r. e.; Mid-Tex Dev. Co. v. McJunkin, 369 S.W.2d 788, Tex.Civ.App. 1963; Hernandez v. Baucum, 344 S.W.2d 498, Tex.

Civ.App. 1961, error ref. n. r. e.; Chemical Express v. Cole, 342 S.W.2d 773, Tex. Civ.App. 1961, error ref. n. r. e.; Texas & N. O. R. R. v. Flowers, 336 S.W.2d 907, Tex.Civ.App. 1960; Continental Bus System, Inc. v. Toombs, 325 S.W.2d 153, Tex.Civ.App. 1959, error ref. n. r. e.; Texas Employer's Ins. Ass'n v. Cruz, 280 S.W.2d 388, Tex.Civ.App. 1953, error ref. n. r. e.; J. D. Wright & Son Truck Line v. Chandler, 231 S.W.2d 786, Tex.Civ.App. 1950, error ref. n. r. e.) where the issue of the propriety of the unit of time argument in calculating damages for pain and suffering was met squarely, the courts consistently have held, without mentioning *Renner*, that the argument is proper with or without the aid of blackboards, placards, or charts. (18: See Texas Employer's Ins. Ass'n v. Cruz, 280 S.W. 2d 388, Tex.Civ.App. 1955, error ref. n. r. e. and cases cited therein). The prevailing rationale of these cases is that the attorney is entitled to discuss freely or comment on such facts as are in evidence and drawn from the facts and circumstances any inferences and deductions that are reasonable, fair, and drawn in good faith. Since there must be some evidence in the record that pain was actually suffered, and since pain is suffered month-by-month and year-by-year, it is a fair argument to treat pain the way it was endured. (19: Hernandez v. Baucum, 344 S.W.2d 498, 500, Tex.Civ.App. 1961, error ref. n. r. e.). However because the intermediate appellate courts neither have distinguished nor considered *Renner* controlling, and, because the Supreme Court has consistently 'n. r. e.'d' cases involving the question, (20: See cases cited in note 17 supra. It is possible that the writ history of these cases indicates a sub-silentio repudiation of the language of West Texas Util. v. Renner, 53 S.W.2d 451, Tex.Comm.App.1932). Texas' position remains uncertain."

In 44 Texas Law Review 195, 196 (1965), Note, "DAMAGES—Use of Unit-of-Time Formula as Basis of Recovery for Pain and Suffering Constitutes Reversible Error. Johnson v. Colglazier, 348 F.2d 420 (5th Cir. 1965).", the following (with footnotes again shown in parenthesis) appears:

"The earliest Texas appellate decision passing on the permissibility of a unit-of-time argument was J. D. Wright & Son Truck Line v. Chandler (6: 231 S.W.2d 786, Tex.Civ.App.–Galveston 1950, writ ref'd n. r. e.). There, the court sanctioned the use of the argument, reasoning that since a statement by the plaintiff's attorney of how much he thought plaintiff ought to recover was proper, a per diem amount suggested for pain and suffering should likewise be proper. Although not adhering to the same reasoning, Texas appellate courts dealing with this issue have unanimously followed Chandler and have allowed the use of unit-of-time-arguments. (7: Mid-Tex Dev. Co. v. McJunkin, 369 S.W.2d 788, Tex.Civ.App.–Dallas 1963, no writ, semble; Hernandez v. Baucum, 344 S.W.2d 498, Tex.Civ.App.–San Antonio 1961, writ ref'd n. r. e.; Chemical Express v. Cole, 342 S.W.2d 773, Tex.Civ.App.–Dallas 1961, writ ref'd n. r. e.; Texas & N. O. R. R. v. Flowers, 336 S.W.2d 907, Tex.Civ. App.–Beaumont 1960, writ ref'd n. r. e.; Louisiana & Ark. Ry. v. Mullins, 326 S. W.2d 263, Tex.Civ.App.—Texarkana 1959, writ ref'd n. r. e., cert. denied, 361 U.S. 966, 80 S.Ct. 596, 4 L.Ed.2d 542, 1960; Continental Bus Sys., Inc. v. Toombs, 325 S.W.2d 153, Tex.Civ.App.—Fort Worth 1959, writ ref'd n. r. e.; cf Kimbell v. Noel, 228 S.W.2d 980, Tex.Civ.App.— Dallas 1950, writ ref'd n. r. e. But see McDowell, Operation Bootstrap, 5 For the Defense 41, 1964. An earlier Texas case, West Tex. Util. Co. v. Renner, 53 S.W.2d 451, Tex.Comm'n App. 1932, holding approved, has been cited as disapproving use of a per diem argument. The court there found objectionable numerous statements of counsel but condemnation was addressed not to the unit-of-time aspect of the argument but to the abuse of using this vehicle in so burlesque a man-

ner). Although the Texas Supreme Court has not ruled on the precise question presented in the principal case, the permissibility of a per diem suggestion for calculating damages for pain and suffering is well entrenched in Texas trial procedure. (8: See cases cited supra note 7; State Bar of Texas, Personal Injury Litigation in Texas §§ 9.2(3), 11.160, 1960)."

In Johnson v. Colglazier, 348 F.2d 420 (1965) the United States Court of Appeals for the Fifth Circuit, in a diversity case originally filed in the U. S. District Court for the Eastern District of Texas, by a divided court held that the "unit-of-time" argument was impermissible and the failure of the trial judge to instruct the jury to disregard it was reversible error. The majority opinion was authored by Judge Hutcheson, joined in by Judge Friendly of the Second Circuit sitting by designation. Judge John R. Brown dissented in an extensive opinion. In *Johnson* the majority opinion cited *Renner* along with other cases in footnote 2, 348 F.2d 422. Judge Brown's dissenting opinion cited *Renner* along with other cases in footnote 7, 348 F.2d 428, as follows:

"*Texas:* Cf. West Texas Utilities Co. v. Renner, Tex.Com.App., 1932, 53 S.W.2d 451. Some assert this is contrary to Texas Court of Civil Appeals approach, decisions in note 8, infra."

Thereafter, on August 3, 1966 the United States Court of Appeals for the Fifth Circuit sitting En Banc decided the case of Baron Tube Co. v. Transport Insurance Co., 365 F.2d 858. This was a diversity suit originally filed in the U. S. District Court for the Northern District of Georgia. Circuit Judge Griffen B. Bell authored the opinion for a unanimous court. The Court pointed out that the propriety of the "unit-of-time" argument as there involved was a federal question—a matter of federal trial procedure. Johnson v. Colglazier was both distinguished and overruled to the extent that it was contrary to *Baron*. The Court

in effect adopted the dissent of Judge Brown in *Johnson*. See 20 Southwestern Law Journal 934 (1966).

In *Baron* the Court held in part as follows:

"The unit of time type of argument is not proscribed by federal statute or by the federal rules. Thus, Johnson v. Colglazier is a judicial application of principles pertaining to jury trials and argument as those principles are followed in trial courts generally. The specific principles involved are that the argument shall not ask the jurors to place themselves in the position of a party, sometimes called the 'Golden Rule' argument; the argument shall not appeal to passion or prejudice; and the argument should be based only upon the evidence or the reasonable inferences to be drawn therefrom.

"The propriety of the unit of time argument has been considered by many courts with these principles as a frame of reference. Some federal courts have countenanced this form of forensic argument, as have many state courts. There are state and federal decisions to the contrary. The subject has been much discussed, and Johnson v. Colglazier has been criticized. And it is to be noted, Footnote (2), that such arguments are permitted in the courts of each state within the territory of this court. Georgia, by statute, allows such arguments. Georgia Code Annot. § 81–1015."

\*  \*  \*  \*  \*  \*

"In essence, the unit of time argument is nothing more than an effort to persuade the jury to evaluate a long period of pain and suffering in terms of its smaller time equivalents. Thus, the idea or worth of one year of pain may not be as understandable, real or persuasive to a juror as its equivalent, three hundred and sixty five days of pain and suffering. Whether the unit be cast in years or months, or weeks or days is a mere matter of degree, and there is little logic in prohibiting the

discussion of large units of time in terms of their smaller mathematical equivalents. It is merely a different way of talking about precisely the same thing and it would be unusual, short of a showing that a defendant would be deprived a fair trial, for the use of the argument to be denied altogether. This is not to say that it is not a powerful form of advocacy, but it is to say that with proper safeguards, as here, it is permissible advocacy. To the extent that Johnson v. Colglazier indicates to the contrary, it is overruled."

The ultimate holding of the Court in *Baron* was that "a unit of time type of argument is not improper where accompanied by a suitable cautionary instruction." The Court discussed the safeguards which may be utilized in connection with such argument and the use of charts, including an instruction to the effect that "the unit of time argument is merely a method of presenting contentions, and is not to be considered as evidence." The footnotes in *Baron* collect many cases from various jurisdictions concerning the "unit-of-time" argument and refer to numerous Law Review articles on the subject. The Texas Courts of Civil Appeals decisions on the subject are noted in footnote 2. *Renner* is not mentioned. The criticism of *Johnson* in 44 Texas Law Review, p. 196, is noted in footnote 5.

Both *Baron* and *Johnson* hold that the question presented is one of federal trial procedure. However, the comment concerning *Johnson* in 20 Southwestern Law Journal, 214, footnote 33, that "Because the Court held that federal law was controlling, the decision should not be considered speculation by the Fifth Circuit as to whether the Texas Supreme Court considers its adoption of West Texas Utility Co. v. Renner, 53 S.W.2d 451 (Tex.Comm.App. 1932) to be controlling in that jurisdiction" appears to be properly applicable also to the decision in *Baron*.

Analysis of the opinion in West Texas Utilities Co. v. Renner, 53 S.W.2d 451 (Tex.

Comm.App. 1932, holdings approved) reflects the following. Renner's damages for personal injuries were fixed by a jury at $22,500.00. Of this amount $7,350.50 was apportioned by the trial court judgment to intervenor Texas Employers' Insurance Association for workmen's compensation payments, leaving $15,149.50 net to Renner. The Court of Civil Appeals affirmed. The Commission of Appeals reversed and remanded because of improper jury argument by Renner's counsel. The court considered three separate phases of the argument. The first argument discussed by the court was one which informed the jury that the recovery for Renner should be over and above the amount paid by the insurer. Objection made on the ground that it was a question of law as to how the verdict would be divided, and not a question of fact, was overruled. The Commission of Appeals held that the argument was improper and in effect advised the jury as to the legal effect of its answer to the damage issue; and that the objection to the argument should have been sustained. The second argument considered by the court was also held to be clearly improper. It was as follows:

"Another portion of the argument, complained of is as follows: 'You know, twenty years from now, twenty-seven years from now, it will be, 'tap, tap, tap,' walking down the pavement. 'Tap, tap,' rain, snow, good weather, cold weather, hot weather, 'tap, tap.' He will just be hopping along on that peg, doing the best he can, while these officials of this company will be in their homes taking things easy, having forgotten about old Renner that they burned up out there in Upton County,' which was unsuccessfully objected to as prejudicial, inflammatory, and out of the record."

The third argument of Renner's counsel, together with the holding of the court, was that set out hereinabove and repeated here for convenience, as follows:

"Equally objectionable was the following argument, properly but futilely objected

to: 'If you pay me $3.00 a day to walk over town with my leg tied up like this (indicating); $3.00 a day like that (indicating) in twenty years' time, it would be $25,000.00 at $3.00 per day."

It is apparent that the opinion in *Renner* lacks detail and preciseness with reference to the last-mentioned argument. The Court does not state the grounds on which objection was made nor the reasons for its holding as to such argument. It may well be that the comment concerning *Renner* in 44 Texas Law Review 196, note 7, that "The Court there found objectionable numerous statements of counsel but condemnation was addressed not to the unit of time aspect of the argument but to the abuse of this vehicle in so burlesque a manner" is well founded. The opinion in *Renner* does not discuss the propriety of the "unit-of-time" argument as such. It should further be noted that at the time *Renner* was decided the former rule prevailed that,

" * * * where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted. * * *" 53 S.W.2d 455.

This rule has long since been superseded. Under current practice reversal will not result " * * * unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; * * *" Rule 434 T.R.C.P. In this situation I believe that the holding of *Renner*

concerning the third argument made therein should be considered as one strictly in the context of that case and particularly in connection with the two other clearly improper arguments there upon which reversal could have been predicated. If the Court had intended to condemn the "unit-of-time" argument as inherently improper and prejudicial, I believe it would have spelled out such important holding and not have left it to conjecture.

In the thirty-six years since the decision in *Renner,* the decision has not been cited on the "unit-of-time" phase of the case by any Texas Court. The rule stated in the majority opinion in *Johnson,* for which *Renner* is cited as authority (348 F.2d 422, footnote 2) along with Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331 (1957) and other cases, as I view it, has been repudiated by the En Banc decision of the U. S. Court of Appeals for the Fifth Circuit in *Baron.* The Texas Courts of Civil Appeals decisions upholding the "unit-of-time" argument, hereinabove mentioned, were decided long after *Renner* and before the decisions in *Johnson* and *Baron.* The Supreme Court of Texas has consistently refused applications for writs of error in such cases with the notation "No Reversible Error."

In line with the foregoing discussion it is my view that *Renner* is not authoritative in support of appellants' contention that reversible error is presented here by appellees' "unit-of-time" argument. I agree that appellants' points one through six should be overruled.

I also agree that reversible error is not presented by appellants' points seven through twenty and that they are properly overruled.

For the above-stated reasons I have voted to affirm the judgment.