AIRLINE MOTOR COACHES, INCORPORATED, V.
MRS. ELVA BENNETT ET AL.

No. A-423. Decided May 23, 1945.
Rehearing overruled June 20, 1945.
(187 S. W., 2d Series, 982.)

*M. M. Feagin* and *Ernest Coker*, both of Livingston and *Strasburger, Price, Holland, Kelton & Miller*, of Dallas, for petitioner.

As to the question of misconduct. Hemsell v. Summers, 138 S. W. (2d) 865; Texas Emp. Ins. Assn. v. Drayton, 173 S. W. (2d) 782; Smerke v. Office Equip. Company, 138 Texas 236, 158 S. W. (2d) 302.

*Campbell & Foreman,* of Livingston, and *Roy M. Jones* and *S. F. Hill,* both of Houston, for respondent.

MR. JUDGE SLATTON, of the Commission of appeals delivered the opinion for the Court.

This case arose out of a collision between a bus and an automobile, in which Mrs. Bennett sustained personal injuries and her husband lost his life. The judgment of the trial court was based upon a special issue verdict in favor of Mrs. Bennett et al and against the Airline Motor Coaches, Inc., in the aggregate sum of $19,500.00, which was affirmed by the Beaumont Court of Civil Appeals, 184 S. W. (2d) 524.

The petitioner, through nine points of error, complains of an alleged improper conduct of respondents' counsel in the argument to the jury, and other acts which occurred during the trial of the case. According to our view, it is necessary to discuss only petitioner's first point.

The issues of liability were contested. The evidence, according to witnesses offered by the respondents, tended to support the grounds of negligence alleged and that such negligence was a proximate cause of the damages sustained. The evidence of the witnesses offered by the petitioner bus line tended to refute the negligent acts charged against it and support the theory of contributory negligence alleged against the driver of the automobile. The evidence was in direct conflict as to the situation of the bus and the automobile at the time of the collision, that is, whether at the time of the collision the bus was on its righthand side of the bridge or the automobile was on its righthand side of the bridge. The first point assigns error to the following opening argument made to the jury by one of respondents' counsel:

"While Mr. * *, attorney for plaintiff, was making the opening argument of the case to the jury he made the following argument:

" 'They have caused her from the time of that accident up to this time, and the doctors say it will be some time yet, to lay in a plaster cast and can't even turn over for that length of time. They have done that, Gentlemen. Now, on top of that, they are willing to try to get you to brand her as a liar, and I don't believe you are going to do it. Oh, Mr. * * will talk to you, and he will get up and tell you how much he loves you and how much

he loves to be over here, and he will talk like he is getting heart to heart with you, but look into his action, Gentlemen, Mr. * * had the nerve to ask that doctor why didn't that bone heal up. Did you make a blood test, Doctor? I say to you Mr. * *, would you cast those kind of insinuations on an innocent lady without a thing in Christ's world or a thing in this record to justify it?' "

Counsel for petitioner: "To which we object as being highly prejudicial and inflammatory, and we ask the Court to instruct the jury not to consider it."

Counsel for respondents: "I am staying in the record. Doctor, did you make a blood test? Yes, sir, negative."

Counsel for petitioner: "Are you overruling it?"

The court: "Objection overruled."

Counsel for respondents (continuing) "It is his own testimony, I don't blame you, * * I would have been ashamed to have it, and I don't believe you Gentlemen will appreciate that kind of treatment. She has come into this Court to get a redress."

One of the respondents, by pleading and proof, sought damage in virtue of a fracture of the right leg and a failure of the bones to unite. On cross examination of her medical witness counsel for petitioner inquired of the witness as to why there was a nonunion of the bones and propounded the following questions:

"Q. Did you test her blood to see if that had anything to do with it?
"A. The usual laboratory tests were made.

"Q. And were they all negative?
"A. Yes, sir.

"Q. Normal?
"A. Yes, sir.

"Q. And because nature would not bridge the gap, that is the reason you did the operation?
"A. Yes, sir."

The petitioner complains of the following remarks which

were made to the jury by counsel for respondents in the closing argument:

"Gentlemen of the Jury, Mr. * * wanted to jump on * * (one of counsel for respondents)—old bustle-gutted * *. Is he gone? No. there he is. I can't brag on * * because you all know him too well. But any time Gentlemen of the Jury, anybody employs * * (one of counsel for respondents) to represent them, I guarantee you * * will do the best he can in a fair and square and impartial manner. And Mr. * * (one of counsel for respondents) I think you would have been a slacker; I think you would have been a slacker to your client when * * (one of counsel for petitioner) the boy from Dallas, asked Doctor Foster:

" 'Doctor, did you make a blood test of this woman? Did you make a blood test of this woman in this cast after the 24th day of June,' meaning only one thing, Gentlemen of the Jury. Had he wanted to do the right thing he could have called Doctor Foster out and talked to him himself. He had a perfect right to. And that has been demonstrated in this case more than any other case I have been associated in * * or * * has been out of this court room half of the time. We have been trying this case and I have a right to assume they are talking to their witnesses. If it was true, I don't blame him for proving it, but Doctor Foster gets on the stand and he says, 'Doctor Foster, did you make a blood test of this woman in a cast.' Gentlemen of the Jury, do you approve of that? that the proper way to do? Is that your conception of the right thing? If it is, Gentlemen of the Jury, you don't agree with me."

There was no objection made to the last quoted argument until the motion for a new trial was filed.

The respondents seek to justify the first quoted argument upon the theory that it was a fair deduction and comment on the manner of conducting the case on the part of petitioner's counsel, and that counsel for respondents had the right to draw the inference that by the asking of the quoted questions the petitioner's counsel made it appear that one of respondents had a blood disease which would interfere with the union of broken bones. The respondents seem to concede that if· the person sustaining the fracture had had such a disease, the inquiry and the facts relating thereto would have been proper evidence in the case, but since the testimony showed that the person did not have such a blood disease, that counsel for respondents had the right to comment on the manner of asking the questions and to

resent the implication that the lady respondent was so infected. The respondent seek to void the error, if any, of the last argument quoted above on the ground that the same was not objected to at the time the argument was made, but the objection was first raised thereto in the motion for a new trial. They further urge that petitioner was not prejudiced thereby for the reason that the recovery had by the respondent referred to was not excessive. The amounts of recovery were only a few of many issues which were submitted to the jury. The argument, if improper, affects the issues of liability as well as the amounts of recovery, particularly where, as in the present case, such issues were contested. There were no objections made to the questions above quoted. The inquiry was not conducted in an improper manner. The questions propounded, although on cross examination, were not suggestive of affirmative answers. The answers to the questions were favorable to the respondent. How, then, can it be said that the asking of such questions and the stated answers thereto have the effect of casting a reflection upon the person about whom the inquiry relates?

Through the argument the jury were told in effect: That counsel for petitioner had unjustly cast insinuations on an innocent lady (one of the party litigants) ; that such conduct was shameful; that the jury should not appreciate it and that the lady had come into court to get a redress.

The trial court approved the argument by overruling petitioner's objections thereto. The speaker in the closing argument to the jury reiterated substantially the same remarks and further charged that if counsel for petitioner wanted to do the right thing, he could have called Dr. Foster, who was an adverse witness to petitioner, and talked to him, thereby saving the necessity of asking the questions before the jury.

Obviously, the argument was prejudicial and inflammatory. The trial court should have sustained the objections made thereto and instructed the jury not to consider it. The trial court, having overruled the objection, denied to the petitioner a valuable right. The argument having been made with the sanction of the trial court, its prejudicial effect cannot be doubted.

In view of the above stated facts and after a consideration of the record as a whole, we are of the opinion that the argument was reasonably calculated to cause and probably did cause an improper verdict, thereby causing an improper judgment to be

rendered in the case. This requires a reversal of the judgments of the lower courts.

The judgment of the Court of Civil Appeals, which affirmed the judgment of the trial court, is reversed, and the cause is remanded to the trial court.

Opinion adopted by the Supreme Court May 23, 1945.

Rehearing overruled June 20, 1945.