**SIMMONS MOTOR COMPANY et al.,**
Appellants,

v.

**Robert A. MOSLEY, Appellee.**

No. 11196.

Court of Civil Appeals of Texas.

Austin.

May 20, 1964.

Rehearing Denied June 10, 1964.

Gay & Meyers, Austin, for appellants.

Brown, Sparks & Erwin, Will G. Barber, Austin, for appellee.

PHILLIPS, Justice.

Robert A. Mosley, the plaintiff below and appellee in this Court, brought suit against the Simmons Motor Company, et al., defendants below and appellants in this Court, in behalf of his wife who was injured as hereinafter described.

On April 23, 1961, the Mosleys were driving to church in their new 1961 Valiant which had been purchased and delivered to the Mosleys by the Simmons Motor Company on March 8, 1961. Suddenly the hood of the car raised up, crashed against the windshield blinding Mr. Mosley's view. As he applied his brakes to stop the car his wife placed her right hand against the dashboard and thrust her left arm out to keep their three year old son, who was on the front seat between them, from falling against the car. Although she succeeded in saving her son from injury, her twisting and straining motion ruptured a disc in her spine, which subsequently necessitated a laminectomy operation. Mrs. Mosley went through a period of intense pain prior to the operation, and, following an operation in which the ruptured disc was removed, she has experienced a slight withering of her arm accompanied by a slight weakness thereto. In addition, her arm is subject to occasional periods of muscle spasm and pain which according to medical testimony may

persist throughout her life. There is no controversy in this suit as to Mrs. Mosley's damages.

In his petition, Mosley alleged that the bottom and top parts of the "safety catch" of the Valiant did not interlock. The hood of this car raised from the front, being hinged at the rear near the front windshield. The hood latch assembly at the front of the hood consisted of two parts: (1) a plunger-type hood lock, the function of which, when engaged, was to hold the hood in a locked position; and (2) a "safety catch" the function of which, when interlocking, was to keep the hood from coming up more than one half inch after the hood lock had been disengaged. The top part of the "safety catch" is a circular "eye-shaped" piece of metal while the bottom part is a piece of metal shaped like a hook. When these two parts are interlocking the hood cannot come up any higher than one half inch until the release lever on the front grill is pulled forward.

One theory of negligence alleged by Mosley was that at the time the Motor Company delivered the Valiant to him on March 8, the bottom part of the "safety catch" on its hood latch assembly was not interlocking with the top part thereof; that such company negligently failed to discover and correct this condition before March 8; and that such failures were each proximate causes of the occurrence in question on April 23. Another theory of negligence pleaded herein by Mosley was that, even after an adjustment by the Motor Company to the Valiant's hood latch on April 3, (at which time Mosley had brought the car back to the Motor Company for a check-up complaining that the hood latch assembly was not working properly) the bottom part of the "safety catch" was not interlocking with the top part thereof; that the Motor Company negligently failed to discover and correct this condition on April 3; and that such failures were each a proximate cause of the occurrence in question on April 23, with the consequential damages described.

Twenty special issues were submitted to the jury that found, in summary, that when the car was delivered to Mosley on March 8, the bottom part of the safety catch of its hood latch assembly was not interlocking with the top part of the safety catch so as to hold the hood down; that the Motor Company failed to discover such condition in said safety catch before March 8; that such failure was negligence; that such failure was the proximate cause of the occurrence in question; that the Motor Company failed to correct the condition of the safety catch before March 8 and that such was negligence and the proximate cause of the accident. That on April 3, defendant Motor Company made an adjustment in the hood latch assembly on the Mosley's Valiant. That after the adjustment in the hood latch assembly was made, the bottom part of the safety catch was not interlocking with the top part of the safety catch so as to hold the hood down; that the Motor Company failed to discover this condition in the safety catch on April 3; that such failure was negligence and a proximate cause of the accident; that the Motor Company failed to correct the condition of the safety catch on April 3; that such failure was negligence and the proximate cause of the accident; that the accident in question was not the result of an unavoidable accident. The jury found the damages to be $9,147.95.

The Trial Court entered a judgment in favor of Mosley on the jury's verdict.

We affirm the judgment of the Trial Court.

The appellant Motor Company is before this Court urging that the Trial Court erred in submitting special issues inquiring about the condition of the hood latch assembly on March 8, 1961 and on April 3, 1961 since the occurrence upon which the suit was based happened on April 23, 1961; that the issues submitted were evidentiary issues and not ultimate issues, the ultimate issue being the condition of the hood latch assembly on April 23, 1961 the date of the accident. Appellants also raise a point of error as to the

argument to the jury made by Mosley's counsel.

Mosley contends that the safety latch, described above, never engaged properly and presented a witness who testified that the procedure the Motor Company followed in attempting to adjust the safety catch constituted negligence. There was also testimony that the bottom part of the safety catch or hook part had originally been painted white, the same color of the car; that little or none of the paint had been rubbed off or scarred after the accident; that this tended to show that the hook had not been engaging with the "eye" counterpart; that similar model cars with less age and use whose hood safety catches were working properly had the hook part of the safety catches that showed scarred paint and areas where the paint was removed due to friction.

The Motor Company presented a mechanic as a witness who testified that after the accident, the hook part of the safety catch had been completely straightened out. That this tended to show that the safety catch was working at the time of the accident on April 23 and that some unusual force had caused the hood to be torn loose from this mooring. This evidence was presented by a mechanic who allegedly repaired the safety latch after the accident in question.

There was evidence that gusts of wind were prevalent on the day of the accident.

Thus there was a direct conflict in the testimony as to whether the safety latch was working on April 23.

The appellant Motor Company maintains that while the evidence presented by Mosley as to the condition of the safety latch on both March 8 and April 3 would be evidence and have a bearing on the possible condition of the latch on April 23, the ultimate fact was the condition of the safety catch on April 23 and that an issue as to the condition of the latch on April 23 should have been submitted. That the Trial Court's failure to submit this issue deprived the Motor Company of having the jury pass on what they contend is the ultimate fact issue presented in the lawsuit. That Mosley should have presented such issue as part of his case. That issue was joined not on the questions of defective condition on March 8 or April 3 but on the question of defective condition on April 23, and it is that ultimate issue that should have been answered by the jury.

Rule 279, Texas Rules of Civil Procedure, states that where a case is submitted on special issues, the court shall submit the controlling issues made by the written pleadings and the evidence. The rule further provides that a party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part. Matthews v. General Accident Fire & Life Assurance Corp., 161 Tex. 622, 343 S.W.2d 251.

Simmons' answer consists of certain special exceptions to Mosley's petition not pertinent here, a general denial and the defense of unavoidable accident.

In order for Mosley to have been charged with the burden of submitting the issue Simmons complains was omitted, the issue would have to be the controlling or an ultimate issue of the case (as Simmons contends) or, an inferential-rebuttal issue as described by Professor Hodges in his treatise on Special Issue Submission in Texas. The latter theory would fail here as such matter in addition to proof must have been plead. See Hodges, cited above, Sec. 32, p. 90 and the cases there cited. Also see Rice v. Thompson, Tex.Civ.App., 239 S.W.2d 137, error ref., n. r. e. Nor is the issue in question the ultimate issue required in the case but is defensive in nature and was neither plead by Simmons nor offered in the proper form as required by the above-mentioned rule.

In Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d

79, the court stated that an ultimate fact is one essential to the right of action or matter of defense and that the court is under the duty of submitting only ultimate or controlling issues. A controlling or ultimate issue is one that when answered favorably to the theory in which it is presented will support a judgment. The converse of this rule is stated in Aetna Casualty & Surety Co. v. Isensee, Tex.Civ.App., 211 S.W.2d 613, writ ref., n. r. e.

Mosley has presented a prima facie case in that the defendant acted, that the act was negligence, that the negligence was the proximate cause of Mosley's damage, and that Mosley was damaged. These are the requirements for a cause of action in damages as set out in the Pepper case cited above.

█ The only occasions that Simmons had any contact with the car was on the dates alleged in Mosley's petition, viz. March 8 and April 3, that on each of the dates Simmons was negligent in failing to find and correct the defect, that such was the proximate cause of the accident and the damages caused. These allegations standing alone when found by the jury favorable to Mosley and supported by proper pleading and proof will support a judgment.

The Supreme Court has held that subsidiary facts included within the ultimate issue of proximate cause need not be submitted separately in a negligence case. Pickens v. Harrison, 151 Tex. 562, 252 S.W.2d 575.

█ While Simmons produced testimony that the hook of the hood latch had been straightened out after the accident thus raising an inference that the hood latch was working on that day, he had neither plead this fact nor submitted an issue inquiring of such in substantially correct wording. Simmons did ask for submission of the following issue:

"Do you find from a preponderance of the evidence that on April 23, 1961,

the hood latch assembly on said 1961 Valiant was not working properly?

"Answer this special issue 'Yes' or 'No.'"

However, this issue is too broad under the doctrine of Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99. This requested issue does not specify the defect alleged, that is, which of the several mechanisms of the hood latch assembly failed to work.

█ We will not detail the cases cited by appellant to the effect that a jury's findings on evidentiary issues will not support a judgment and that a court must submit to the jury only controlling issues. As stated above this premise is correct however, the fact situations in these cases are not similar to those of the case at bar, consequently they add nothing here.

█ We hold that Simmons waived the abovementioned defense under Rule 279.

Appellant Motor Company assigns error to the following argument made by Mosley's attorney in his opening speech to the jury:

"* * * What is a fair compensation for that horrible pain, that horrible experience? I am just trying to pick a fair and reasonable figure. $5000.00 seems to me such a figure. $19,600—I think in our pleading we asked for $20,000.00. These are not exact figures, but on a reasonable basis $20,000.00 should be the answer to No. 20, or to put it another way, what is a reasonable figure? How about this? What would a reasonable person say—get to the point where they would say, 'I would rather have the money and have gone through this. I would do it for the money.' Now, if you can find that figure, then just below that figure, the top figure that they would rather have gone through the suffering that they have and have the money, how many reasonable people would be in this condition for $20,000.00?"

Appellant immediately objected to this argument as being improper and moved that the court instruct the jury to disregard it. The court overruled the motion, and appellant excepted to this ruling.

Appellant also cites as improper argument by Mosley's counsel that it would be reasonable to compensate Mrs. Mosley one dollar for every day of her life expectancy for the pain and suffering that she would have to go through, which, according to counsel's calculations, was $14,600.

Cases cited by appellant as examples of improper argument are of two types. One, where the arguments were designed to cause the jury to follow an erroneous theory in calculating the damages, "I don't think a man * * * would sell his leg for a hundred thousand dollars," Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; or, "I value my life too dearly, I wouldn't sell my life for any amount of money, and I don't believe there is a single gentlemen on this jury would sell your life for any amount of money," Foster v. Langston, Tex.Civ.App., 170 S.W.2d 250. The other type of case cited is where the arguments were prejudicial and inflammatory, Airline Motor Coaches v. Bennett, 144 Tex. 36, 187 S.W.2d 982; Traders & General Insurance Company v. White, Tex.Civ.App., 320 S.W.2d 702, writ ref. n. r. e.

As stated by the court in A. B. C. Storage & Moving Company v. Herron, Tex.Civ. App., 138 S.W.2d 211, writ dism., where the following argument was allowed: "* * * there is not a person within the hearing of my voice in this courtroom that would undergo what that boy underwent out there the last hour and a half of his life for $20,000.00, or $50,000.00. * * * there is not a man within the hearing of my voice that would undergo that physical pain and agony and torture of mind for anything like $20,000.00, and you know it."

"We are unable to say that the argument complained of was an appeal to passion and prejudice rather than rea-

son. Counsel was arguing the point what sum of money would compensate for the pain and suffering which the deceased underwent on the occasion in question. As stated in Texas & N. O. Ry. Co. v. New, Tex.Civ.App., 95 S.W.2d 170, 176, writ of error dismissed, the court said: 'In transmuting pain and suffering into dollars and cents, the problem of the jury is to construct an equation composed of relatively imponderable elements. The law awards compensatory damages in money for wrongfully inflicted pain and suffering; but it furnishes no yardstick or scale by which to measure or weigh such pain and suffering pecuniarily. The only standard supplied is that the damages shall be compensatory; that is, commensurate with the injury. To "compensate" is to pay the value of. To estimate the value or compensatory measure in money one must be able to visualize the intensity and duration of the pain and suffering, and then endeavor to place a fair value thereon.'

"If a lawyer could not make such a comment as is here complained of, he would in effect be limited to a bare recital of the evidence which the jury had heard bearing on the issue, and to reading the issue to the jury. Jurors do not expect such judicial restraint of an advocate, and are not so easily moved by advocacy as appellant seems to believe. The argument, so it seems to us, did not, under the authorities approved by the Supreme Court, exceed bounds of legitimate advocacy."

Also see Karotkin Furniture Co. v. Decker, 50 S.W.2d 795, Tex.Comm.Appeals.

With respect to the "dollar a day" argument for future pain complained of, instead of awarding the $14,600 asked, the jury awarded $7,300.

In reading Mosley's attorney's argument to the jury in its entirety, counsel

on numerous occasions, argued for reasonable compensation for the pain his client had gone through and would go through. The verdict rendered was not excessive under the facts of the case and even if the arguments complained of could be said to be objectionable they did not cause the rendition of an improper judgment in the case. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

Although it is my opinion that the Trial Court failed to submit a controlling issue as required by Rule 279, T.R.C.P., no reversible error is reflected.

A controlling or ultimate issue "involves a proper legal analysis of the controversy." Luling Oil and Gas Co. v. Edwards, 32 S.W. 2d 921, Austin Civil Appeals, writ dism., Dreeben v. Sidor, 254 S.W.2d 908, Amarillo Civil Appeals, writ ref., n. r. e. See also Texas Employers Ins. Ass'n v. Reed, 150 S.W.2d 858, writ dism., C. J., Amarillo Court of Civil Appeals.

Appellees pleaded in this case that, "At and before the time and occasion in question" defendants were "negligent in failing to discover and eliminate such defect in such safety catch." They also alleged that, "This defect in such hood safety catch continued to exist until the date of the accident in question."

No issue was submitted to the jury inquiring whether or not the safety catch was defective at the time of the accident. This was a "plaintiff issue." Appellees, who were plaintiffs did not request a submission of this issue, nor did appellants object to the charge on this ground. Appellants did request an issue inquiring about the defective condition of the safety catch at the time of the accident but they did not complain about the failure to submit this issue in their motion for new trial.

These observations lead to these conclusions: (1) Appellees waived their right to have a controlling issue submitted (2) Appellants waived their right to complain about the failure of the Trial Court to submit this issue.

It is my opinion that the findings made by the jury are sufficient to support the judgment. I, therefore, concur in the affirmance of this case.